Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
744 Broad Street, 16th Floor
Newark, NJ 07102
Phone: (973) 735.0607

DECHERT LLP
By:     Terry D. Johnson, Esquire
        Thomas Kane, Esquire
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ  08543
1-609-620-3280

PUBLIC INTEREST LAW CENTER OF PHILADELPHIA
BY:     Barbara E. Ransom, Esquire
125 S.  9th Street, 7th Floor
Philadelphia, PA  19107
215-627-7100

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF CAMDEN

| | |
|---|---|
| Charles Major, Major Tours; Victoria Daniels; M&M Tours; James Wright; Ocean Tours, Inc.; Glen Ragin, Sr.; Jamm Tours; Robert Allen; RAC Tours; Carl Revels; CMT Tours<br><br>      Plaintiffs,<br><br>   v.<br><br>Michael Colorel, in His Personal and Business Capacities; New Jersey Transportation; Sharon Harrington, in Her Business Capacity; Diane Legriede, in Her Business Capacity; Vincent Shultz, in His Personal and Business Capacities; Jimmy's Lake Side Garage; James Restuccio, in His Personal Capacity<br><br>      Defendants. | The Honorable Jerome B. Simandle<br><br>Civil Action No. 05-3091 (JBS)<br><br><br>**NOTICE OF MOTION  FOR AN ORDER GRANTING PLAINTIFFS MOTION TO COMPEL THE PRODUCTION OF EMAIL DISCOVERY** |

TO:   Nonee Lee Wagner, Esquire
Albert Barnes, Esquire
Office of the Attorney General
25 Market Street
P.O. Box 114
Trenton, NJ   08625
*Attorneys for Defendants New Jersey Department of Transportation, Michael Calorel,*
*Vincent Schulze, Diane Legreide and Sharon Harrington*

William J. Pollinger, Esq.
William J. Pollinger, P.A.
302 Union Street
Hackensack, NJ 07601
*Attorney for Defendants Jimmy's Lakeside Garage and James Restuccio*

**PLEASE TAKE NOTICE** that on July 21, 2008 at 9:30 a.m. or as soon

thereafter as counsel may be heard, the undersigned shall move before the Honorable Jerome B.

Simandle, United States District Magistrate Judge for the District of New Jersey, Mitchell H.

Cohen United States courthouse, 1 John F. Gerry Plaza, Camden, New Jersey, on behalf of

Plaintiffs, for an Order Granting Plaintiffs Motion to Compel the Production of Email Discovery.

**PLEASE TAKE FURTHER NOTICE** that, at the aforesaid time and place

Plaintiffs shall rely on the accompanying Memorandum of Law in Support of Plaintiffs Motion

to Compel the Production of Email Discovery.

**PLEASE TAKE FURTHER NOTICE** that oral argument is hereby requested.

Respectfully submitted,

_____

Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
400 High Street, Suite A
Burlington City, NJ 08016
609.267.4450

Barbara E. Ransom, Esquire
Public Interest Law Center of Philadelphia
125 South 9th Street, Suite 700
Philadelphia, PA 19107
215.627.7100

Terry D.  Johnson, Esquire
Thomas Kane, Esquire
Dechert, LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
609.620.3280

*Counsel for Plaintiffs*

Dated: June 16, 2008

Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
744 Broad Street, 16th Floor
Newark, NJ 07102
Phone: (973) 735.0607

DECHERT LLP
By:     Terry D. Johnson, Esquire
        Thomas Kane, Esquire
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ  08543
1-609-620-3280

PUBLIC INTEREST LAW CENTER OF PHILADELPHIA
BY:     Barbara E. Ransom, Esquire
125 S.  9th Street, 7th Floor
Philadelphia, PA  19107
215-627-7100

Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF CAMDEN

| | |
|---|---|
| Charles Major, Major Tours; Victoria Daniels; M&M Tours; James Wright; Ocean Tours, Inc.; Glen Ragin, Sr.; Jamm Tours; Robert Allen; RAC Tours; Carl Revels; CMT Tours | The Honorable Jerome B. Simandle |
| Plaintiffs, | Civil Action No. 05-3091 (JBS) |
| v. | |
| Michael Colorel, in His Personal and Business Capacities; New Jersey Transportation; Sharon Harrington, in Her Business Capacity; Diane Legriede, in Her Business Capacity; Vincent Shultz, in His Personal and Business Capacities;  Jimmy's Lake Side Garage; James Restuccio, in His Personal Capacity | **PLAINTIFFS MOTION TO COMPEL THE PRODUCTION OF EMAIL DISCOVERY** |
| Defendants. | |

Plaintiffs respectfully move this Court, pursuant to Rules 26(b) and 34 of the Fed. R. of

Civ. P.  to Order State Defendants to immediately produce the Schulze emails in a searchable pdf

format; that State Defendants work with Plaintiffs to determine the most effective and efficient

way to obtain all of the email production in an electronic file as it is kept in the ordinary course of business; and, that State Defendants bear any cost associated with the retrieval of any archived emails from the New Jersey Department of Transportation and the Motor Vehicle Commission as requested in Plaintiffs' First Request for Production of Documents.

For all of the reasons set forth in their accompanying Memorandum of Law, Plaintiffs pray that this Court grant their Motion.

Respectfully submitted,

_____
Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
400 High Street, Suite A
Burlington City, NJ 08016
609.267.4450

Barbara E. Ransom, Esquire
Public Interest Law Center of Philadelphia
125 South 9th Street, Suite 700
Philadelphia, PA 19107
215.627.7100

Terry D.  Johnson, Esquire
Thomas Kane, Esquire
Dechert, LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
609.620.3280

*Counsel for Plaintiffs*

Dated: June 17, 2008

Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
744 Broad Street, 16th Floor
Newark, NJ 07102
Phone:          (973) 735.0607

DECHERT LLP
By:     Terry D.  Johnson, Esquire
          Thomas Kane, Esquire
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ   08543
1-609-620-3280

PUBLIC INTEREST LAW CENTER OF PHILADELPHIA
BY:     Barbara E. Ransom, Esquire
125 S.  9th Street, 7th Floor
Philadelphia, PA   19107
215-627-7100

                                                    **Counsel for Plaintiffs**

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF CAMDEN

| | |
|---|---|
| Charles Major, Major Tours; Victoria Daniels; M&M Tours; James Wright; Ocean Tours, Inc.; Glen Ragin, Sr.; Jamm Tours; Robert Allen; RAC Tours; Carl Revels; CMT Tours<br><br>                        Plaintiffs,<br><br>                v.<br><br>Michael Colorel, in His Personal and Business Capacities; New Jersey Transportation; Sharon Harrington, in Her Business Capacity; Diane Legriede, in Her Business Capacity; Vincent Shultz, in His Personal and Business Capacities; Jimmy's Lake Side Garage; James Restuccio, in His Personal Capacity<br><br>                        Defendants | The Honorable Jerome B. Simandle<br><br>Civil Action No. 05-3091 (JBS)<br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL EMAIL DISCOVERY FROM THE STATE DEFENDANTS MICHAEL COLOREL, SHARRON HARRINGTON, DIANE LEGRIEDE AND VINCENT SCHULZE** |

## I.    <u>INTRODUCTION</u>

Plaintiffs Charles Major, Major Tours; Victoria Daniels; M&M Tours; James Wright; Ocean Tours, Inc.; Glen Ragin, Sr.; Jamm Tours; Robert Allen; RAC Tours; Carl Revels; CMT Tours ("Plaintiffs"), filed this matter on June 7, 2005 claiming, *inter alia*, that State Defendants New Jersey Department of Transportation, Michael Colorel, Sharon Harrington, Diane Legriede, and Vincent Shultz ("State Defendants") discriminated against them on the basis of their race. Plaintiffs filed this action after several years of various, ineffective, attempts to obtain relief from this discrimination.[1] As early as September 2003, State Defendants were put on notice that African American owners and operators of commercial buses were asserting claims of racial profiling by New Jersey Department of Transportation ("NJDOT") inspectors of commercial buses. Exhs. A-1, A-2 and A-3. Because Defendants failed to resolve their complaints, Plaintiffs Major and Ragin joined with others to file this present action.

Plaintiffs have worked diligently to obtain the email discovery to which they feel they are entitled pursuant to Rules 26(b) and 34 of the Fed. R. of Civ. P. Plaintiffs' counsel attaches hereto her Certification of Good Faith Effort. Exh. B: Ransom 6/16/08 Certification. This is the second such certification filed by counsel on this issue. See Exh. C: Ransom 9/17/07 Certification w/Exhibits A-E. Plaintiffs incorporate those arguments presented herein to the extent they are applicable. Although some of the issues presented have been resolved, Plaintiffs' request for email production remains unresolved. In addition, it is the State Defendants lack of due diligence that has made the task more complicated and – as the State Defendants assert – very expensive. Pursuant to

---

[1] Plaintiffs Charles Major, Major Tours, Glen Ragin, Sr. and Jamm Tours were clients of Robert Sugarman, the attorney attacking on their belief in seeking to obtain this relief.

2

the Court's April 8, 2008 Amended Scheduling Order, Plaintiffs herein submit this

Motion to Compel Email Discovery from the State Defendants.[2]

## II.     ATTEMPTS TO SECURE THE REQUESTED DISCOVERY

Plaintiffs made their first request for production of emails to the State Defendants

on January 3, 2007.

> Any and all memoranda, notes, correspondence, e-mails, or other documents written by Michael Colorel, Vincent Schultz, Sharon Harrington, Diane Legriede, which in any way relate to Plaintiffs, and any documents addressed to or copied regarding or which relate in any way to plaintiffs. RFP at ¶ 1.[3]

> Any and all notes, correspondence, memoranda or other documents relating or referring to inspection of buses in Atlantic City, and which is the subject matter of this lawsuit. RFP at ¶ 2.[4]

> Any and all documents including correspondence, memoranda, notes or other documents which refer or relate in any way to defendant's implementation of the Motor Carrier Safety Assistance Program (MCSAP) guidelines from January 1, 2000 until today.  RFP at ¶ 3.

The State Defendants' March 13, 2007 response to Plaintiffs set the tone for the

controversy over this discovery that has continued until the present.

Response to RFP # 1

> Objection. This request is improper in that it is vague and ambiguous, unduly burdensome and overbroad in its scope. As drafted, it is not reasonably calculated to lead to the discovery of admissible evidence at trial. The request is also improper to the extent that it fails to provide the

---

[2] By letter, the Court granted Plaintiffs' request for an extension of this date until today.  This request does not encompass all electronic discovery, but only the email discovery.  It is our understanding that with the production that Defendants produced this year, they have complied with the request for other forms of electronic discovery.  Plaintiffs reserve the right to revisit this matter if additional information shows that their understanding is flawed.

[3] These paragraphs are taken from Plaintiffs Charles Major, Major Tours, Victoria Daniels, and M&M Tours First Request for Production of Documents to the State Defendants, served on the State Defendants on January 3, 2007.

[4] In the definition section of their Production Request, Plaintiffs identified documents as, *inter alia*, e-mail and electronic records or representations of any kinds.  Consequently, Plaintiffs' paragraphs 2 and 3 include the request for a production of any emails which relate to the inspection of buses and the implementation of the MCSAP inspections.

parameters (time, subject matter, key words, and the like) under which a
search of e-mails could be undertaken. Finally, the request is improper to
the extent that is seeks documents protected by the attorney-client
privilege or work product privilege. Without waiving these objections, the
State Defendants refer to documents produced and to be produced at a
time and place convenient to the parties. With respect to document which
may hereafter be withheld from production as privileged, a privilege log
shall be provided.  Response to RFP at ¶ 1.[5]

<u>Response to RFP # 1 Paragraph 2</u>

Objection. This request is improper in that it is vague and ambiguous,
unduly burdensome and overbroad in its scope. As drafted, it is not
reasonably calculated to lead to the discovery of admissible evidence at
trial. The request is improper to the extent that it seeks documents
protected by the attorney-client privilege or work product privilege.
Without waiving these objections, the State Defendants refer to documents
produced and to be produced at a time and place convenient to the parties.
With respect to document which may hereafter be withheld from
production as privileged, a privilege log shall be provided.  Response to
RFP at ¶ 2.

<u>Response to RFP # 1 Paragraph 3</u>

Objection. This request is improper in that it is vague and ambiguous,
unduly burdensome and overbroad in its scope. As drafted, it is not
reasonably calculated to lead to the discovery of admissible evidence at
trial. The request is also improper to the extent that it fails to provide the
parameters (time, subject matter, key words, and the like) under which a
search of e-mails could be undertaken. The request is improper to the
extent that it seeks documents protected by the attorney-client privilege or
work product privilege. Without waiving these objections, the State
Defendants refer to documents produced and to be produced at a time and
place convenient to the parties, including but not limited to annual
implementation reports relating to MCSAP in New Jersey. With respect to
document which may hereafter be withheld from production as privileged,
a privilege log shall be provided.  Response to RFP at ¶ 3.

On June 29, 2007, after entering her appearance and becoming familiar with the

ongoing discovery, Plaintiffs' counsel, Barbara Ransom, served on the Defendants a

---

[5] These paragraphs are taken from State Defendants Responses to Plaintiffs' Charles Major, Major Tours,
Victoria Daniels and M&M Tours First Request for Production of Documents to State Defendants, sent to
plaintiff on March 13, 2007.

4

Second Request for Production of Documents[6] and sent Albert Barnes a request for more specific responses to Plaintiffs' interrogatories and for the production of documents that were more responsive to the request. Plaintiffs identified time frames and reminded counsel that, "… the December 1, 2006 amendments to Rule 34 Fed. R. Civ. Pro. treat electronically stored information ("ESI") as a unique category of discoverable information." Although suggesting some search terms that could be employed, Plaintiffs further advised Defendants that it is their "responsibility to undertake a diligent and comprehensive search of all data bases and documents in order to produce responsive documents."

During the June 11, 2007 conference, this Court directed the State Defendants' and the Plaintiffs' counsel to meet and confer to resolve the discovery dispute. Two telephone conferences occurred: July 31 and August 8 about outstanding discovery matters including e-mail discovery. On August 10, Counsel for the State Defendants asserted, *inter alia,* that:

> The response provided is proper and does not require supplementations. Without waiving this, we have discussed your providing additional proposed search parameters for the conducting of an e-mail search through the New Jersey Office of Information Technology. You had indicated that you would do so immediately following both our July 31, 2007 and our August 8, 2007 telephone conferences. I have yet to receive any correspondence from you detailing proposed realistic search parameters.[7]

On August 10, 2007, Plaintiffs provided a list of proposed search terms. Having no background information on the State Defendants' operating system or their system for

---

[6] There is some overlap with the request for email production in the First Request and the Second Request. Although Plaintiffs do not repeat these requests here, the failure to include them here does not absolve the State Defendants of their responsibility to provide those requested emails.

[7] The responses to Requests 2 and 3 was basically the same. However, Mr. Barnes never produced the head of New Jersey Office of Information Technology and the conference never occurred.

email maintenance, these search terms were crude.  On August 15, Plaintiffs sent another
correspondence regarding the outstanding discovery and noted their production of the
search terms to refine the email searches.  On September 7, 2007, Plaintiffs' counsel filed
her Certification of Good Faith.

On September 17, the Court held a discovery conference with the parties during
which issues regarding email discovery were discussed and memorialized in the Court's
September 18, 2007 Letter Order.  Exh. D: Schneider 9/18/2007 Order.  At paragraph 4
of its Order, the Court directed the parties to meet and confer regarding digital discovery
on the date that Mr. Barnes indicated he would be meeting with the New Jersey Office of
Information Technology.  Mr. Barnes identified the department head as the person with
the knowledge needed to formulate the request.  The reputedly knowledgeable New
Jersey designee never participated on the call.[8]  Mr. Barnes represented that the director
of the New Jersey Office of Information Technology was being replaced and his
replacement needed time to get up to speed on the email system.  In his December 11,
2007 letter to this Court, Mr. Barnes stated that:

> It is fair to state that the parties, including the State Defendants, need to
> give additional attention to e-discovery matters.  Based upon feedback
> received from the State's IT experts, media tapes, first using the Veritas
> and later using the Syncsort back-up software utility.  It is anticipated that
> the capacity for searching of e-mails for key words or combinations of key
> words will be very limited and that the time and expense required to
> undertake searches of the e-mail archives will be considerable.  If they are
> to be undertaken, the cost of such searches should be borne, at least in
> substantial part, by the Plaintiffs.  It is anticipated that even the most basic
> searches will generate thousands of "hits" and that the State Defendants'
> counsel will be forced to expend extensive resources to cull these hits for
> responsiveness and potential privilege.  Exh. E: Barnes 12/11/2007 letter
> to the Court at p. 3.

---

[8] The parties disagree on the details concerning the conference call.

State Defendants' letter appears as though they did very little to obtain the necessary information. Moreover it is clear that they did not seek to obtain the requested discovery until almost a year after Plaintiffs' request for production.

During his deposition, Vincent Schulze, chief of the Commercial Bus Inspection Unit ("CBIU"),[9] testified that he never deleted his emails and had saved everyone since 1999. He also testified that no one had asked him about his emails. On February 6, 2008, Plaintiffs sent the State Defendants a letter requesting the email discovery that Mr. Schulze testified had saved on his computer. Exh. G: Ransom 2/6/2008 letter to Wagner. Among the discovery requested was a request for:

> Some 12,000 emails that are stored on [Schulze's] computer from 1999 to the present and that are related to the operation of the Commercial Bus Unit.

Ms. Wagner responded that:

> These requests are directly related to outstanding document requests to which the Stte defendants are producing the email person, Mary Ann Mazon, and the State Defendants preserve all privileges associated with these documents. Documents will be provided after the technology depositions are concluded and searches devised to be less broad than everything relating to the unit. Exh.H: Wagner 3/27/2008 letter to Plaintiffs' counsel.

On January 10, 2008, Plaintiffs served a Rule 30(b)(6) Notice on the Defendants to take the deposition of the person with knowledge, *inter alia*, of: computer systems used by Defendants to manage electronic mail; storage procedures and medium used to store electronic mail; and, retrieval process and procedures for stored and archived email. Exh. F: Rule 30(b)(6) Notice to DOT. Defendants did not produce anyone from the office which Mr. Barnes represented as being the source of the necessary information.

---

[9] The CBIU are the investigators, formerly identified in the complaint in pleadings in this matter as the DOT agents.

Rather, Defendants produced the Department of Transportation's own Maryann Mazon,

Network Administrator II. Ms. Mazon testified that:

> Q    Can you tell me, Miss Mazon, what your current employment is?
>
> A    I work for IT. My function there is I manage a portion of the network which is basically the bulk of the network for both Motor Vehicles and D.O.T. I run email services, web services, Internet services, many services for the department for 5200 users.
>
> Q    Can you explain what "IT" means?
>
> A    It's Information Technology.
>
> Q    And when you say you work for IT, is it the IT for the department that is associated with New Jersey, the State of New Jersey, or is it the IT department associated with the Department of Transportation?
>
> A    The Department of Transportation.

Mazon 4/3/08 Dep. at p 7.

Further, Ms. Mazon  testified that:

> Q    Did you review any documents in preparation for this deposition?
>
> A    Did I review any documents in -- um, not really. I mean, I had gotten this. MS. WAGNER: You may show her that.
>
> Q    And by "this," you mean a letter dated August 10, 2007 that was written by me, Barbara Ransom, to Al Barnes?
>
> A    Yes.
>
> Q    How long ago did you receive this letter?
>
> A    Well, I read it this morning. I received it I think Friday.
>
> Q    Okay. And the letter is dated, as I said, August the 10th. You received it Friday?
>
> A    April 2nd. MS. WAGNER: Yesterday.
>
> Q    And was there any other documents that you have reviewed in preparation for this deposition?

A       I only gathered information based off of this that you wanted to do some
        searches. I just went to see how far back we go with our tapes, our backup
        tapes.

Mazon 4/3/08 Dep. at pp 23-25

Ms. Mazon's testimony indicates a distinct failure by the State Defendants to take any

action to ensure that its IT Defendants were aware of the requests for email discovery

until some 16 months after the formal request for discovery was served. More

importantly, neither DOT's Network Administrator nor the supervisor of its Records

Management Department, Ms. Jacobi[10] were made aware that claims of racial

discrimination had been levied, let alone filed, against the State Defendants. Neither

took any steps to put a litigation hold on any documents, records, data compilation,

emails, etc. that relate to Plaintiffs' claims. Moreover, Ms. Jacobi testified that it is the

DOT's policy to put a litigation hold on documents that are the subject matter of

litigation. Both testified that there was such a litigation hold put on all emails created by

the DOT in response to a matter which they identified as "Shark River." Ms. Mazon

testified that it was the notice of the "Shark River" litigation that propelled the DOT to

preserve on tape all emails from 2003, the DOT has produced all of its data from 2003

without restriction.

Q.      What is Shark Run -- Shark River?

A       I'm assuming it was a project that was going on in the department.

Q       Do you know by chance if it were a lawsuit or anything like that?

A.      I mean, I know a law office is involved. I don't know what's going on.
        We had given them our tapes from 2003, 2004, originals, and we also
        made copies for them and sent them off.

Mazon 4/3/08 at pp 27-28.

---

[10] Plaintiffs took the deposition of the DOT's supervisor of Records Management who testified on June 10,
2008. We do not yet have a transcript of the testimony.

9

Ms. Mazon made clear that the preservation of the emails was different for the MVC than it was for the DOT.

Q    When you say "monthly backup," is that a full backup?

A    Yes.

Q    So the full backup would include documents and emails. Is that correct?

A    Yes.

Q    All right. And you said that the policy now is to maintain these documents indefinitely?

A    Yes.

Q    When was that policy put into effect?

A    I believe it was when Shark River came about. So we had to keep everything.

Q    So that was in about 2005?

A    Yes.

Q    Now, before that, the data that is all pre-2005 data, what happened to that data?

A    It was recycled. The tapes were recycled into the library and overwritten. For Motor Vehicles. D.O.T., we just had them. We just kept them and they went over to Shark River from 2003 and 2004.

Q    So Motor Vehicles process is a recycle all of the backup tapes after what period of time?

A    Well, we were recycling from 2003 to 2005.

Q    D.O.T. 2003, 2004, those tapes were maintained?

A    Correct.

Mazon Depo at pp 29-30.

Because Ms. Mazon did not have all of the answers to Plaintiffs' questions during her

deposition, Plaintiffs followed-up with a written request for the additional information.

Among the requests, Plaintiffs asked that since:

> Ms. Mazon testified that she has never done a search of the magnitude that
> we discussed and that the system which she described is something which
> she derived by trial and error. Plaintiffs request that Ms. Mazon consult
> with the technical support at Novell to verify the most efficient and
> effective way to copy the emails from defendants email boxes into an
> electronic file format that plaintiffs can access and search. Further,
> Plaintiffs request that she consult with Novell to identify ways to narrow
> the search parameters to obtain all emails pertaining to any of the plaintiffs
> that were prepared, sent or received by any member of the CBIU.

Exh. I: Ransom 5/8/2008 letter to Wagner.

Plaintiffs received a reply from Mr. Barnes which stated in pertinent part that:

> Ms. Mazon testified as to the most efficient way for archived e-mails to be
> retrieved. It is for Plaintiffs' experts, not Ms. Mazon, to ascertain and
> propose the "most efficient and effective way to copy emails from
> defendants['] enauk boxes into an electronic file format that plaintiffs can
> access and search." The State Defendants object to providing the
> Plaintiffs access to all e-mails, whether active or archived. We still have
> no clear understanding as to what "search parameters" Plaintiffs seek to
> narrow. Exh. J: Barnes 5/xx/2008 letter to Ransom.

Despite such contentious responses, Plaintiffs have continued to try to work

amicably with the Defendants to obtain the email discovery. In our most recent letter,

Plaintiffs requested only the emails preserved by, sent to or created by Mr. Schulze at the

point of his deposition in January 2008 and those in a searchable .pdf format. Exh. Exh.

K.: Ransom 6/10/2008 letter to Barnes and Wagner. Plaintiffs continue to want all of the

available email discovery.

There are three issues that make it clear that Plaintiffs' motion is timely. (1)

Defendants never put a litigation hold on the documents that are relevant to this matter;

(2) Defendants long and protracted delay in providing the particulars of their email

system clearly have prejudiced Plaintiffs; and, (3) Defendants testimony that they would

produce the email tapes to the plaintiffs in an action filed against the DOT without

restrictions.  Plaintiffs contend that the State Defendants must produce all of the emails

that are preserved for the DOT and MVC.  Plaintiffs further contend that they should not

be penalized for the failure of the Defendants to keep these files active by ensuring that

there was a litigation hold put on such discovery from at least September 2003, the point

at which the State Defendants were aware of claims of racial discrimination against the

CBIU – whether that entity was under the auspices of the DOT or in its current posture as

a unit within the MVC.

## II.    **LEGAL ARGUMENT**

### A.    **Motion to Compel Requirements in the Federal Rules of Civil Procedure.**

Pursuant to the Federal Rules of Civil Procedure, a party may compel

disclosure if the opposing party fails to make a disclosure required by Rule

26(a).   Fed. R. Civ. P. 37(a)(3)(A).   Evasive or incomplete disclosure,

answers or responses must be treated as a failure to disclose for the purposes

of Rule 37(a).  *Id.* at 37(a)(4).

In the District of New Jersey, discovery motions must be accompanied by an

affidavit certifying that the movant (1) has "conferred with the opposing party" in a good

faith effort to resolve issues raised by the motion, and (2) has been unable to reach an

agreement. Rule 37.1(b)(1) of the N.J. Loc R. of Civ. P. The affidavit must also set forth

"the date and method of communication used in attempting to reach agreement." *Id.* See

Exh. A: Ransom Affidavit.  In addition, the discovery motion must include copies of

"pertinent portions of depositions, interrogatories, demands for admission and responses, etc. which are the subject matter of the motion." *Id.* at 37.1(b)(2).

Plaintiffs have complied with the requirement of the Federal and Local Rules to obtain a motion to compel. After more than 16 months of delay, Defendants have no excuse for not presenting the requested discovery.

### B. Plaintiffs' Request for Email Production is Within Rule 26's Scope.

Rule 26 allows parties to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and requires only that the information sought appear "reasonably calculated to lead to the discovery of admissible evidence." The U.S. Supreme Court has recognized the broad scope of Rule 26. *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (discovery rules are to be afforded broad and liberal treatment); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (relevance under discovery rules is broader than admissibility).

Although Plaintiffs believe that the requested emails will be admissible at trial, Rule 26 clearly makes no requirement that discovery requests be predicated on the standard for admissibility that is applied at trial. *Hickman v. Taylor*, 329 U.S. 495, 507-08 (1947). Rather, Rule 26's scope should be construed broadly:

> It is well established that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

*Keybank Nat'l Assoc., v. Tracey Heun Brennan & Co.*, 2005 U.S. Dist. LEXIS 31063 at *6 (D.N.J. 2005). The burden now falls to Defendants to demonstrate that producing the requested email discovery is, as they claim, "unduly burdensome and overbroad in its scope. *See Howard Jay Josephs, v. Harris Corp.*, 677 F.2d 985, 992 (3d

13

Cir. 1982) (the burden falls on the party resisting discovery to demonstrate how such request is overly broad, oppressive or burdensome).

### C. The Federal Rules Require the State Defendants to Produce the Requested Email Discovery.

Information stored electronically has been available for discovery since 1970, when Federal Rule of Civil Procedure was amended to include "data compilations." *See Daewoo Elecs. Co. v. United States,* 650 F. Supp. 1003, 1006 (Ct. Intl. Trade 1986). The standards for electronic discovery are subject to Rule 26 which allows the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). This liberal provision does not distinguish between electronic and non-electronic discovery. Furthermore, courts have noted that, "electronic evidence is no less discoverable than paper evidence…." *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Plaintiffs' requests for the production of the State Defendants emails which in any way relate to Plaintiffs, and any documents addressed to or copied regarding or which relate in any way to plaintiffs; any and all notes, correspondence, memoranda or other documents relating or referring to inspection of buses in Atlantic City, and which is the subject matter of this lawsuit; and any and all documents including correspondence, memoranda, notes or other documents which refer or relate in any way to defendant's implementation of the Motor Carrier Safety Assistance Program (MCSAP) guidelines fall squarely within the scope of discovery contemplated by Rule 26. The electronic information sought by plaintiffs was filed in a timely manner. The discovery request is relevant to the plaintiffs' claim and is reasonably tailored to lead to relevant information.

Barring a court order limiting discovery, defendant's failure to produce discovery is a violation of federal procedure.

      1.    <u>The Schulze Emails Are Accessible and Should be Produced Immediately.</u>

Determining whether electronic information is accessible will typically require an analysis of the media on which the information is stored. *Zubulake*, 217 F.R.D. at 318. Information that does not need to be restored or manipulated to be usable is generally deemed "accessible." *Id.*, at 319. Generally accessible sources of electronic information include hard drives, optical disks, and archives. Accessibility does not necessarily mean that the data is readily obtainable, since "the time it takes to access such data ranges from milliseconds to days." *W.E. Auchubon Co., Inc. v. BeneFirst, LLC*, 245 F.R.D. 38, 42 (D. Mass., 2007). Courts have generally deemed sources of information "not reasonably accessible" when the burden or expense necessary to make the source usable outweighs the likely benefit, taking into account the needs of the parties, the amount in controversy, the importance of the proposed discovery and other considerations. *See Wachtel v. Guardian Life Ins. Co,.* 239 F.R.D. 376, 385 (D. N.J., 2006); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,* 257 F.R.D. 567 (D. Minn. 2007).

Mr. Schulze testified that he saved all of his emails. These should be easily retrieved with very little, if any, burden to State Defendants. Since Plaintiffs have modified their request for these emails as a test case to determine the nature and use of the email documents and have agreed to their production in a searchable .pdf format, there should be no hesitation from the State Defendants to produce this discovery.

      2.    <u>The Non-archived Emails Are Accessible and Should be Produced.</u>

As *Zubalake* makes clear, "data that is kept in an accessible format" is produced under the usual rules of discovery – the burden of production falls on the responding party and cost-shifting is applied "**only** when electronic data is relatively inaccessible." *Zubulake*, 217 F.R.D. at 324. All of the email discovery at issue should be accessible. Any inaccessibility or hardship as a result of State Defendants' archival system is attributable to Defendants' failure to place a litigation hold on the electronic documents, including the emails.

3.   <u>Emails Which State Defendants Declare Are Inaccessible Should be Produced Because Plaintiffs Have Good Cause to Compel Discovery.</u>

Upon a showing a good cause by the requesting party, Rule 26 allows this Court to grant Plaintiffs' request for archived emails which State Defendants argue are inaccessible. Rule 26(b)(2)(B). When making a determination of whether the requesting party has established good cause, a court must consider the limitations of Rule 26(b)(2)(C), which focuses on the costs and potential benefits of discovery. A court may also consider circumstances surrounding the discovery requests:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

Rule 26 Advisory Committee's note to 2006 Amendment.

This Court has used criteria similar to those listed in the Advisory Committee's note to order a motion to compel otherwise "inaccessible" electronic discovery. In *Wachtel v. Guardian Life Ins. Co.*, the court ordered a party responding to a Motion to

16

Compel to produce electronic documents and assume all costs associated with their production. *Wachtel* at 390. The court justifies its ruling by citing actions of the responding party that contributed to an unsuccessful discovery process. The responding party had not reviewed for production the "vast majority" of emails for relevancy or privilege concerns. *Id.* at 385. Instead, the responding party issued "boilerplate objections simply stating 'burden.'" *Id.* at 387. The responding party's failure to respond to document requests in a timely manner made some electronic information more difficult to retrieve. *Id.* Finally, the court found that the responding party's misfeasance would cause the requesting party to "face great time and money to decide whom to re-depose."

The decision in *Wachtel* suggests that court should consider a responding party's failure to place adequate litigation holds on electronic information when analyzing a requesting party's show of good cause. Courts impose a duty to preserve evidence when the party in possession of relevant evidence "knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D. N.J. Jan. 3, 2008).

These decisions from this Court fall on all fours with the current dispute. State Defendants knew as early as the Fall of 2003 that litigation that African American commercial bus owners and operators were on the verge of litigation to resolve their claims of racial discrimination by the investigators who inspected their buses. State Defendants' procrastination resulted in files being archived that should have remained

17

active and readily accessible.  The fact that State Defendants recognized their responsibility to produce electronic emails in another matter to which the NJDOT is a party speaks to the fact that State Defendants knew or should have known that they had an obligation – as early as 2003 – to produce these documents.  Plaintiffs should not be burdened with any costs necessary to retrieve and review these emails.

III.   CONCLUSION

For all of the reasons set forth above, Plaintiffs move this Court for an Order that State Defendants immediately produce the Schulze emails in a searchable pdf format; that State Defendants work with Plaintiffs to determine the most effective and efficient way to obtain all of the email production in an electronic file as it is kept in the ordinary course of business; and, that State Defendants bear any cost associated with the retrieval of any archived emails from the New Jersey Department of Transportation and the Motor Vehicle Commission as requested in Plaintiffs' First Request for Production of Documents.

Respectfully submitted,

_____/s/_____

Yvette C. Sterling, Esquire
Sterling Law Firm, LLC
400 High Street, Suite A
Burlington City, NJ 08016
1.609.267.4450

Barbara E. Ransom, Esquire
Public Interest Law Center of Philadelphia
125 South 9th Street, Suite 700
Philadelphia, PA 19107
215.627.7100

Terry D.  Johnson, Esquire
Thomas Kane, Esquire
Dechert, LLP
902 Carnegie Center, Suite 500
Princeton, NJ 08540
1.609.620.3280

Dated: June 16, 2008

*Counsel for Plaintiffs*

18