[Doc. No. 212]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MAJOR TOURS, INC., et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>COLOREL, et al.,<br><br>      Defendants. | Civil No. 05-3091(JBS/JS) |

**OPINION AND ORDER**

This Opinion and Order addresses Plaintiffs' application [Doc. No. 212] requesting production of the State Defendants' November 4, 2005 and March 22, 2007 litigation "hold" letters.[1]  Plaintiffs argue the letters are relevant to their examination of the scope of defendants' document production and whether they spoliated relevant evidence.  Plaintiffs' claim the hold letters are no longer protected by the attorney-client privilege or work-product doctrine because there has been a preliminary showing of spoliation. Defendants do not agree.  Defendants claim Plaintiffs have failed to make a preliminary showing of spoliation and therefore their

---

[1] "A legal hold is a communication ... that suspends the normal disposition or processing of records."  Shira A. Scheindlin, Daniel J. Capra, The Sedona Conference, Electronic Discovery and Digital Evidence at 688-89 (West 2009).  The communication may be called a "hold," "preservation order," "suspension order," "freeze notice," "hold order," or "hold notice." Id. (citations omitted).

letters are protected from discovery. [Doc. No. 218]. For the reasons to be discussed plaintiffs' application is GRANTED.

**Background**

On June 15, 2005, Plaintiffs filed their complaint naming Michael Colorel, New Jersey Department of Transportation, Sharon Harrington, Diane Legriede, Vincent Shultz, Jimmy's Lake Side Garage, James Restuccio, Lakeview Towing, and Doe's (1-10) as Defendants. Plaintiffs, owners of bus companies, allege there have been discriminatory safety inspections of African American owned buses en route to Atlantic City.

On November 4, 2005, Albert D. Barnes, Deputy Attorney General, sent letters to Mr. Colorel, Mr. Schulze, Ms. Legreide, and Ms. Harrington making them aware of the litigation and outlining general ways in which their assistance might be needed (for example, in locating documents). On March 22, 2007 - almost seventeen months later - Mr. Barnes sent the same group, as well as two other individuals, letters specifically mentioning "preservation of NJMVC Records."

On March 1, 2009, the parties' joint letter outlined the status of their electronic discovery. The letter indicated that within 60 days Defendants would produce the in-production ("live") emails of the specified Defendants and Commercial Bus Investigation Unit ("CBIU") employees. The emails would be in their native electronic format as kept in the ordinary course of business.

2

However, the Defendants objected to producing archived emails.

On March 9, 2009, Defendants moved for a protective order. [Doc. No. 178]. Defendants argued the Court should issue a protective order because recovering the archived emails would be unduly burdensome and costly. [Doc. No. 178-2]. Plaintiffs opposed the motion. [Doc. No. 184]. At the oral argument on Defendants' motion the Court decided that the resolution of the motion was dependent, in part, on whether Defendants implemented an adequate litigation hold. The Court reasoned that if defendants deleted emails that should have been preserved, this was a relevant factor the Court should consider when it decided whether it was prohibitively burdensome or expensive for the Defendants to retrieve its archived emails.

On June 10, 2009,[2] Plaintiffs moved for the production of the State Defendants' November 4, 2005 and March 22, 2007 hold letters. On June 17, 2009, Defendants' opposed Plaintiffs' application. [Doc. No. 218]. Defendants claim Plaintiffs have not proven that a single email germane to the litigation has been spoliated, and consequently Plaintiffs' argument that a preliminary showing of spoliation warrants production of the hold letters is unfounded.

**Discussion**

As a general matter hold letters are not discoverable,

---

[2] See Doc. No. 212, letter incorrectly dated "June 15, 2009."

particularly when a party has made an adequate showing that the letters include material protected under attorney-client privilege or the work-product doctrine. See In re eBay Seller Antitrust Litigation, No. 07-CV-01882(RS), 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007). See also Gibson v. Ford Motor Co., 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007)(finding that defendants are not required to produce litigation hold letters because "[n]ot only is the document likely to constitute attorney work-product, but its compelled production could dissuade other businesses from issuing such instructions in the event of litigation"); Muro v. Target Corp., 250 F.R.D. 350, 360 (N.D. Ill. 2007)(denying plaintiff's objection to Magistrate's ruling that Target's litigation hold notices are subject to the attorney-client privilege and to work-product protection); Turner v. Resort Condos. Int'l, No. 03-CV-2025(DFH), 2006 WL 1990379, at *7-8 (S.D. Ind. July 13, 2006)(accepting defendant's assertion that its litigation hold document is privileged and denying plaintiff's motion to compel defendant to produce the document in discovery). Despite the fact that plaintiffs typically do not have the automatic right to obtain copies of a defendant's litigation hold letters, plaintiffs are entitled to know which categories of electronic storage information employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end. In re eBay, 2007 WL 2852364, at *2.

Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs the letters are discoverable.[3]  See Keir v. Unumprovident Corp., No. 02-CV-8781(DLC), 2003 WL 21997747 at *6 (S.D.N.Y. Aug. 22, 2003)(allowing detailed analysis of emails pertaining to defendant's preservation efforts after finding that electronic records which had been ordered preserved had been erased).  See also Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 425 nn.15-16 (S.D.N.Y. 2004) ("Zubulake V")(disclosing the details of counsel's litigation hold communication after discovering that at least one e-mail had never been produced); Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 634 (D. Colo. 2007)(permitting plaintiff to take a Rule 30(b)(6) deposition to explore the procedures defendants' counsel took "to identify, preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the present litigation had began).

Spoliation of evidence is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." See Mitsui O.S.K. Lines v. Continental Shipping Line

---

[3] Indeed, Defendants seems to acknowledge this is the applicable law.  See June 17, 2009 letter brief at 3, Doc. No. 218, "The law review article and certain cases cited by the plaintiffs recognize that a hold letter may be discoverable if there is a preliminary showing of spoliation."

5

Inc., No. 04-CV-2278(SDW), 2007 WL 1959250, at *6 (D.N.J. June 29, 2007)(citing West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)).  Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents.  Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("Zubulake IV").  However, a party's discovery obligations do not end with the implementation of a litigation hold.  Zubulake V, 229 F.R.D. at 432.  Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce relevant documents.  Id.

The decision in United Medical Supply Co. v. United States, 77 Fed. Cl. 257 (Fed. Cl. 2007), is instructive.  In that case the court ordered production of defendant's hold letters after finding that the defendant spoliated evidence.  The facts of the case were such that the hold letters were not received by a number of the desired recipients and as a result, some of the documents requested in discovery were destroyed.  Id. at 260-61.  Initially the court ordered the defendant to file affidavits discussing how the missing documents had been handled.  Id. at 261.  Accord Keir v. Unumprovident Corp., No. 02-CV-8781(DLC), 2003 WL 21997747, at *3 (S.D.N.Y. Aug. 22, 2003) (requiring defendants to provide an affidavit explaining why emails from certain enumerated dates are no longer in existence).  Shortly thereafter the court ordered

6

defendant to file and produce copies of any general notices defendant sent, either in paper or electronic form, to all affected facilities requesting or relating to the preservation of relevant documents. United Medical, 77 Fed. Cl. at 262.

Here, as in United Medical, the Court finds there has been a preliminary showing of spoliation of evidence. In making this finding the Court relies on defendants' Fed. R. Civ. P. 30(b)(6) testimony in which Plaintiffs asked Defendants' witnesses about their litigation hold efforts. When Michael Colorel, Principal Investigator for the CBIU, was asked on February 8, 2007 whether he was advised by his lawyers to preserve his email communications regarding claims of racial discrimination, he answered that he was "probably" told by his lawyers to do so, but additionally admitted, "I don't sa[v]e anything." Colorel Dep. at 187-88. Maryann Mazon, another Rule 30(b)(6) witness, testified on April 3, 2008 that no one ever talked to her about creating a litigation hold policy and that she was not sure what a litigation hold policy was. Mazon Dep. at 32.

For purposes of deciding the present application the Court finds that September 11, 2003 was the date Defendants' duty to preserve relevant evidence was triggered. On this date Robert Sugarman, Esquire sent a letter to New Jersey Attorney General Peter C. Harvey and Commissioner John F. Lettiere of the New Jersey Department of Transportation alleging racial profiling of

7

African American owned bus charter companies who charter trips to casinos in Atlantic City.  Earlier, Senator Arlen Specter had sent a letter to the previous Commissioner of the New Jersey Department of Transportation (Commissioner Fox) on May 14, 2002, with an enclosed copy of a constituent complaint regarding the discriminatory conduct of the CBIU.  Commissioner Fox responded to Senator Specter's May 14, 2002 letter but denied any wrongdoing.  Sugarman's September 11, 2003 letter reiterated the severity of the allegations and suggested that "the operators are entitled to monetary compensation for the tens of thousands of dollars of losses which they have suffered."  Sugarman's letter concluded by requesting a response "within two weeks in order to avoid recourse to litigation."

Applicable case law dictates that the duty to preserve material evidence arises not only during litigation but also extends to that period before litigation "when a party should have known that the evidence may be relevant to future litigation." Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998). See also Baliotis v. McNeil, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994) (stating that a duty to preserve evidence, independent from a court order to preserve evidence, arises where there is knowledge by the plaintiff of the existence or likelihood of litigation). The Advisory Committee comments to Fed. R. Civ. P. 37(e) further prescribe that any automatic deletion feature should be turned off

8

and a litigation hold imposed once litigation can be reasonably anticipated. See also Peskoff v. Faber, 244 F.R.D. 54, 60 (D.D.C. 2007). The Court finds that the State Defendants should have anticipated litigation at least as early as September 11, 2003, even though the complaint was not filed until June 15, 2005. No later than the receipt of Sugarman's September 11, 2003 letter, Defendants could and should have foreseen that litigation was reasonably foreseeable.

The earliest Defendants allegedly mentioned email preservation in the present action was November 4, 2005, and the first formal hold letter was not sent until March 22, 2007. Given that the Court finds September 11, 2003 is the date Defendants' duty to preserve relevant evidence was triggered, it is probable that relevant evidence was lost before Defendants issued their litigation hold. It is questionable, although the Court is not presently ruling on the issue, whether Defendants' November 4, 2005 letter qualifies as an adequate hold letter. If not, then Defendants' March 22, 2007 letter was issued 21 months after Plaintiffs' complaint was filed. Given this gap it is reasonable to infer that some relevant evidence was lost in the approximate two years between September 11, 2003 and November 4, 2005, or the three and a half years between September 11, 2003 and March 22, 2007. See Kinnally v. Rogers Corp. No. 06-CV-2704(JAT), 2008 WL 4850116, at *6 (D. Ariz. Nov. 7, 2008)(finding that in certain

9

cases, such as In re: Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060 (N.D. Ca. 2006), the failure to implement a timely litigation hold results in the inevitable destruction of evidence).

It is admittedly difficult to know exactly what evidence was lost during the window of time in which a litigation hold was not put in place. See Goodman v. Praxair Services, Inc., No. MJG-04-391, 2009 WL 1955805, at *17 (D. Md. July 7, 2009)(finding that "failure to issue a litigation hold prevents the Court from determining the exact number of relevant emails, memoranda, or documents from the key players that were not preserved"). Nonetheless, given the number of relevant custodians who were not asked to preserve evidence immediately after September 11, 2003, and the significant time lapse before the November 4, 2005 or February 8, 2007 letters were issued, the Court infers that some relevant evidence was lost.  The fact that one of the Defendants admitted he did not save any of his emails, and Defendants' Rule 30(b)(6) witness did not even know what a litigation hold was, is evidence that Defendants did not fulfill their role of preserving all relevant documents.

The Court rejects Defendants' argument that even if Mr. Colorel did not save some of the emails generated prior to this litigation, those emails may not be lost because of the possibility that they may be found in other people's mailboxes.

10

Just because some of Mr. Colorel's emails may be recoverable does not suggest that others have not been spoliated. For the reasons already discussed, it is likely that certain emails, which were likely deleted by Mr. Colorel and the respective sender/recipient(s), will not be in any email mailboxes.

Although the Third Circuit has not ruled on the issue, most applicable authority from around the country provides that litigation hold letters should be produced if there has been a preliminary showing of spoliation. The Court is satisfied that Plaintiffs have made this showing.[4] Consequently, the Court will grant Plaintiffs' application and order the production of Defendants' hold letters.

---

[4] The court is not ruling at this time whether spoliation sanctions should be imposed upon Defendants. The issue is not addressed in this Opinion and Order. The only issue addressed herein is whether Defendants' litigation hold letters should be produced in discovery. If and when Plaintiffs apply for sanctions there are different options available to the Court, including the denial of any sanctions. See Mitsui O.S.K. Lines v. Continental Shipping Line Inc., No. 04-CV-2278(SDW), 2007 WL 1959250, at *6 (D.N.J. June 29, 2007)(citing MOSAID Techs. Inc. v. Samsung Elecs. Co., 348 F.Supp.2d 332, 335 (D.N.J. 2004))(stating that potential sanctions for spoliation include: (1) dismissal of a claim or granting judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference, referred to as "a spoliation inference"; (4) fines; and (5) attorneys' fees and costs). See also Paramount Pictures Corp. v. Davis, 234 F.R.D. 102, 111 (E.D. Pa. 2005) ("[t]here is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the Court").

**Conclusion**

For all the reasons discussed herein, it is hereby ORDERED this 4th day of August, 2009, that plaintiffs' application requesting production of the State Defendants' November 4, 2005 and March 22, 2007 litigation hold letters is GRANTED. The Court finds that Plaintiffs have made a preliminary showing of spoliation. To the extent not already done, it is ORDERED that defendants shall identify all recipients of the November 4, 2005 letter. Defendants shall also produce only those portions of the letter that refer to litigation hold or preservation issues. The remainder of the letter is protected by the attorney-client privilege and work-product doctrine. As to the March 22, 2007 letter, to the extent not yet done, all recipients of the letter shall be identified. Defendants shall also produce all portions of the letter that address litigation hold and preservation issues. The remainder of the letter does not have to be produced; and

IT IS FURTHER ORDERED that the November 5, 2005 and March 22, 2007 letters shall be produced by August 18, 2009. The letters are designated as Confidential pursuant to the Discovery Confidentiality Orders (see [Doc. Nos. 85, 139, 197]) entered in the case.

s/Joel Schneider<br>
JOEL SCHNEIDER<br>
United States Magistrate Judge