[Doc. No. 178]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MAJOR TOURS, INC., et al.,

        Plaintiffs,

   v.

COLOREL, et al.,

        Defendants.

Civil No. 05-3091(JBS/JS)

**OPINION AND ORDER**

This matter is before the Court on the "Motion for a Protective Order" [Doc. No. 178] filed by the State defendants. The Court has received plaintiffs' response [Doc. No. 184], defendants' reply [Doc. No. 188] and numerous supplemental letter briefs. [See, e.g., Doc. Nos. 199, 200, 202, 206, 207 and plaintiff's May 20, 2009 letter brief]. The issue has also been addressed at several court conferences. For the reasons to be discussed defendants' motion is GRANTED in part and DENIED in part.

Background

Since this Order is primarily for the benefit of the parties, the Court will not set forth in detail the procedural and factual background of the case. The Court incorporates by reference the discussion in its Opinion granting plaintiffs' motion to compel discovery. See Major Tours, Inc. v. Colorel, C.A. No. 05-3091 (JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4, 2009). The essence of

plaintiffs' complaint is that the defendants engaged in racial profiling and discrimination when they inspected plaintiffs' buses en route to Atlantic City, New Jersey.

Defendants' motion addresses plaintiffs' request for electronic discovery. Defendants seek a protective order regarding plaintiffs' request for copies of e-mail communications from the back-up tapes or archived e-mails maintained by the New Jersey Department of Transportation ("NJDOT"). Defendants claim the e-mails are "inaccessible" due to the cost and burden to retrieve them. Defendants want to limit e-mail discovery to their "in production" e-mails which has been completed. Plaintiffs challenge whether defendants' cost and burden estimates are accurate. Plaintiffs also argue the requested e-mails should have been preserved. Plaintiffs contend it is inequitable for defendants to argue it is costly and burdensome for them to retrieve their e-mails when they were under a duty to preserve them.

It is not inaccurate to characterize defendants' motion as a moving target. As more detailed information regarding defendants' electronic information is obtained, and as defendants produce their electronic documents, the issues in dispute become more focused. The Court's analysis will be based on its synthesis of the parties' submissions.

The relevant time period that has been used for discovery purposes is January 1, 2000 to December 31, 2007. In addition, the

Court has determined "that September 11, 2003 was the date Defendants' duty to preserve relevant evidence was triggered." Major Tours, at *3.  The universe of available backup tapes numbers approximately 2500.  Defendants originally estimated it would cost in excess of $1 million to retrieve the requested e-mails.  See Certification of Bruce K. Green ¶17, Doc. No. 178-3. This estimate did not account for the time and cost to review the responsive documents for privilege and relevancy.  Defendants' Reply Brief at 11, Doc. No. 188.  Defendants subsequently estimated the cost to harvest the requested e-mails at $1.5 million.  See Doc. No. 206.

Plaintiffs are focusing a large part of their claims on the actions of the State's Commercial Bus Investigation Unit ("CBIU"). Prior to July 2003, the CBIU was part of the NJDOT.  As of July 2003 the CBIU became part of the Motor Vehicle Commission ("MVC"). Defendants claim that since May 2005 "[a]ll emails system-wide [were] retained in their entirety."  Reply Brief at 7, Doc. No. 188.  Defendants also claim that from April 2003 to the present consecutive backup tapes exist for NJDOT e-mails on a monthly basis. Transcript of April 17, 2009 Hearing ("Tr.") at 35-37.  The MVC server crashed in May 2005.  Id. at 34.  However, one full set of MVC backup tapes exist from April 2005 to the present, and everything after March 2006.  Id. at 73.  It is possible, but no one can know for sure until the backup tapes are searched, that the backup tapes may contain e-mails from 2000 to 2003 or 2004.

Approximately 200 "scattered" NJDOT backup tapes exist between 2000 to April 2003.  Id. at 38.

As to the e-mail production that has been completed, defendants searched the e-mail records of 37 custodians.  See Account Creation Summary, Doc. No. 200-4.  Defendants "harvested" approximately 152,000 e-mails form the live production mailboxes of the custodians.  A total of 135,000 documents were reviewed, and 70,000 of these documents contained a hit on one or more of the 100 search terms agreed to by the parties.  See Doc. Nos. 200, 202.  Defendants produced a statistical summary of their e-mail collection efforts for its 37 custodians.  See Doc. No. 207-4.

Discussion

The resolution of defendants' motion is dependant on the application of Fed. R. Civ. P. 26(b)(2)(B).  This Rule provides in pertinent part:

> (B) Specific Limitations on Electronically Stored Information.  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

Pursuant to this Rule, defendants must produce electronically stored information that is relevant, not privileged, and reasonably

4

accessible, subject to the discovery limitations in Rule
26(b)(2)(C). If defendants establish that the requested e-mails
are "inaccessible" within the meaning of Rule 26(b)(2)(B), the
documents must still be produced if plaintiffs establish good cause
considering the limitations in Rule 26(b)(2)(C). "The decision
whether to require a responding party to search for and produce
information that is not reasonably accessible depends not only on
the burdens and costs of doing so, but also on whether those
burdens and costs can be justified in the circumstances of the
case." Advisory Committee Notes to Fed. R. Civ. P. 26(b)(2)(B),
2006 Amendment. Factors to examine in this analysis include:

> (1) the specificity of the discovery request; (2) the
> quantity of information available from other and more
> easily accessed sources; (3) the failure to produce
> relevant information that seems likely to have existed
> but is no longer available on more easily accessed
> sources; (4) the likelihood of finding relevant,
> responsive information that cannot be obtained from
> other, more easily accessed sources; (5) predictions as
> to the importance and usefulness of further information;
> (6) the importance of the issues at stake in the
> litigation; and (7) the parties' resources.

Id.

The Court's analysis starts with determining whether
defendants satisfied their burden of demonstrating that the
requested e-mail discovery is "not reasonably accessible because of
undue burden or cost." The Court finds that defendants have
satisfied this burden. In the first instance, the Court notes that
the requested data is maintained on defendants' backup tapes. This

storage media is typically classified as inaccessible.  <u>Zubulake v.</u>
<u>USB Warburg LLC</u>, 217 F.R.D. 309, 319-20 (S.D.N.Y. 2003).[1]   In
addition, plaintiffs have not credibly rebutted defendants'
estimate of the substantial cost that must be spent to retrieve the
requested e-mails.  It is not sufficient for plaintiffs to merely
claim that defendants' estimates are exaggerated or inaccurate.
Plaintiffs should have presented contrary estimates or affidavits.
Given the nature of defendants' storage media containing the
requested e-mails, and the substantial burden and cost to retrieve
the e-mails, the Court finds that the requested discovery is not
reasonably accessible within the meaning of Rule 26(b)(2)(B).

As noted, merely because the requested e-mails are not
reasonably accessible does not equate to immunity from discovery.
If plaintiffs establish good cause the e-mails must be produced.
Whether good cause exists depends upon a weighing of the relevant
considerations already identified.

As to the first relevant factor, plaintiffs' request is
reasonably specific.  The parties agreed upon the relevant keywords

---

[1]The court in <u>Zubulake</u> stated:

"Inaccessible" data ... is not readily usable.  Backup
tapes must be restored using a process similar to that
previously described, fragmented data must be de-
fragmented, and erased data must be reconstructed, all
before the data is usable.  That makes such data
inaccessible.

<u>Id</u>. at 320.

they would use when they searched the records of the 37 custodians. This factor weighs in plaintiffs' favor. However, the second relevant factor weighs heavily in defendants' favor. The Court finds that a substantial amount of relevant information is available to plaintiffs from a number of more easily accessed sources. For example, plaintiffs have and will take a substantial number of depositions. In addition, thousands of relevant documents and e-mails have already been produced to plaintiffs.[2] The third factor examines whether defendants failed to produce relevant information that seems likely to have existed but is no longer available from more easily accessed sources. The Court finds that this factor is neutral. As to a number of the key witnesses in the case (V. Schulze, D. Mattei, G. Spencer, S. Harrington and D. Legriede), it appears that most if not all of their relevant e-mails have been produced. See Doc. No. 206 at 7. In addition, defendants point out that due to the relatively late dates e-mail accounts were set up for many of the 37 requested custodians, backup tapes do not exist for the majority of the CBIU investigators whose e-mails are being requested. See defendants'

---

[2]For example, defendants identified 20,306 e-mails (31,326 documents) for Vince Schulze for the time period of March 15, 1999 to April 3, 2009. Defendants also identified 24,825 e-mails (32,108 documents) for Sharon Harrington for the time period of March 8, 2004 to April 31, 2009. See Email Collection Summary, Doc. No. 207-4. Schulze and Harrington are unquestionably key parties and witnesses in the case.

Letter Brief at 5-7, Doc. No. 206.[3]   Nevertheless, the Court
cannot rule out the possibility that some relevant evidence is
contained in defendants' backup tapes.  As to the fourth factor,
the likelihood of finding relevant responsive information that
cannot be more easily obtained, the Court finds that this factor
weighs slightly in defendants' favor.  Plaintiffs have not produced
evidence that the backup or archived e-mails contain relevant
information that is not otherwise available or cumulative of other
evidence.  There is, of course, a possibility that some of the
requested e-mails contain "smoking gun" information.  However, this
is pure conjecture.

    The fifth factor examines the importance and usefulness of the
requested e-mails.  The Court finds that this factor weighs in
defendants' favor.  Based upon the Court's knowledge of the
voluminous discovery already taken, and the Court's review of
hundreds of documents during its in camera inspections, the Court
believes that if relevant evidence exists in the requested e-mails
it is likely cumulative of other relevant evidence already
produced.  The Court finds that the possibility that some
cumulative evidence may be produced is not sufficient to outweigh
the cost and burden to produce the requested e-mails.  The sixth

---

[3]The Court cannot rule out the possibility that some
relevant e-mails may have been deleted by these custodians
despite the fact that tens of thousands of their e-mails were
harvested.  However, no credible evidence has been presented that
any intentional spoliation has taken place.

factor examines the importance of the issues at stake in the litigation.  This factor favors plaintiffs.  This case involves allegations of racial discrimination by public employees.  In such an instance, it is not unreasonable to permit broad discovery so long as it is consistent with the Federal Rules of Civil Procedure and applicable case law.

The seventh and last factor examines the parties' resources. The Court finds that this factor favors defendants.  Given the complexity and scope of this litigation, it is apparent that defendants have already spent hundreds of thousands of dollars in time and money on the defense of the case.  No party, including the State, has an unlimited litigation budget to pay for document production efforts that in all likelihood are of marginal benefit.

In sum, the Court finds that plaintiffs have not established good cause to order the State to search its universe of backup and archived e-mails for the requested e-mails.  The Court finds that a weighing of the relevant considerations favors defendants.  The Court agrees with Zubulake, supra, which indicated that a court should not treat the "good cause" factors as a checklist and determine which party has the most checks.  217 F.R.D. at 322.  The factors should be weighed by importance.  In the Court's view the most important considerations are the fact that defendants have already produced tens of thousands of relevant documents, a substantial number of depositions have been and will be taken,

9

there is no evidence of intentional spoliation, and the requested e-mails are likely to be of marginal benefit and cumulative of documents already produced.   The Court concludes that the slim likelihood that new relevant evidence may be discovered does not outweigh the substantial burden and expense that must be spent to retrieve the requested e-mails on defendants' 2500 backup tapes.

In lieu of searching 2500 backup tapes, defendants raised the possibility of a scaled back alternative.  The second search option is to only search the December 31, 2007 backup tape set (15 tapes) from the NJDOT, and/or the March 2, 2006 backup (two tape sets) from the MVC.  Defendants obtained two cost estimates for searching these tapes depending upon whether de-duplication or no de-duplication occurs.[4]  The cost estimates are as follows:

Not De-Duplicated

| | |
|---|---|
| March 2006 only | $125,645 to $157,000 |
| December 2007 only | $127,128 to $158,075 |
| Both Sets | $132,770 to $164,210 |

De-Duplicated

| | |
|---|---|
| March 2006 only | $79,945 to $113,450 |
| December 2007 only | $81,425 to $114,100 |
| Both Sets | $86,895 to $121,370 |

It is plain that the cost of only searching the December, 2007 (NJDOT) and March, 2006 (MVC) backup tapes is substantially less than the cost to search the State's 2500 backup tapes.

---

[4]De-duplication gives you one document while no de-duplication gives you all the copies of the e-mail that exist on a tape.  Tr. at 91.

Nevertheless, after analyzing the considerations previously identified, and the factors in Rule 26(b)(2)(C), the Court still finds that the burden and expense to harvest the requested e-mails outweighs its likely usefulness. Therefore, the Court rules that it will not Order defendants to conduct the second search option at their sole cost. However, this does not end the Court's analysis since an alternative that has not yet been examined is whether the parties should share the cost to retrieve defendants' electronic information.

The Court has the discretion to shift all or part of the costs of producing electronic discovery to the requesting party. Peskoff v. Faber, 251 F.R.D. 59, 61 (D.D.C. 2008) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)).[5] Several courts have held that cost shifting should only be considered when electronic data is relatively inaccessible, such as in backup tapes. Wachtel v. Health Net, Inc., 239 F.R.D. 81, 91 n. 23 (D.N.J. 2006); Cason-Merenda v. Detroit Medical Canter, C.A. No. 06-15601, 2008 WL 2714239, at *3 (E.D. Mich. July 7, 2008). Further, cost shifting should only be considered when electronic discovery imposes an

---

[5] "[T]he good-cause inquiry and consideration of the Rule 26(b)(2)(C) limitations are coupled with the authority to set conditions for discovery. The conditions may ... include payment by the requesting party of part or all of the reasonable costs of obtaining information from sources that are not reasonably accessible." Fed. R. Civ. P. 26 Advisory Committee Note to 2006 Amendment. See also Rule 26(b)(2)(B) providing that if the court orders inaccessible evidence to be produced for good cause, "[t]he court may specify conditions for the discovery."

undue burden or expense on the responding party.  Coronas v. Willis Group Holdings Ltd., No. 06 Civ. 15295(GEL), 2008 WL 4548861, at *4 (S.D.N.Y. Oct. 8, 2008)(citing Zubulake, supra, 217 F.R.D. at 318).

The central question to ask when evaluating cost shifting is "how important is the sought-after evidence in comparison to the cost of production." Zubulake, 217 F.R.D. at 322-23.  In order to determine if cost shifting is appropriate the Court will analyze the factors in Rule 26(b)(2)(B) and the seven factors set forth in Zubulake, supra.  These seven factors are:

1.  The extent to which the request is specifically tailored to discover relevant information;

2.  The availability of such information from other sources;

3.  The total cost of production, compared to the amount in controversy;

4.  The total cost of production, compared to the resources available to each party;

5.  The relative ability of each party to control costs and its incentive to do so;

6.  The importance of the issues at stake in the litigation; and

7.  The relative benefits to the parties of obtaining the information.

217 F.R.D. at 322.

For the same reasons already discussed the Court finds that the burden and expense to retrieve the requested e-mails in defendants' second option outweighs the potential benefit of the

12

discovery.  The retrieval cost of the second option is still likely to exceed $100,000, independent of the time and expense to review the e-mails for privilege and relevancy.  Given the resources already spent by the parties, and the Court's finding that the requested e-mails are likely to be cumulative of other available evidence, the expenditure of another $100,000 is not justified.

Although the Court finds that the requested e-mails are likely to be cumulative, the Court recognizes that plaintiffs insist the e-mails contain relevant evidence.  The Court is also mindful that plaintiffs are pursuing issues of paramount public importance.  See Zubulake, 217 F.R.D. at 321 ("if a case has the potential for broad public impact, then public policy weighs heavily in favor of permitting extensive discovery").  The Court, therefore, finds that a fair balancing of the parties' interests leads to the conclusion that plaintiffs and defendants should share the cost of searching defendants' backup tapes pursuant to defendants' second search option.[6]

Defendants contend that only the NJDOT's December, 2007 tapes should be searched and that a search of the MVC's March 2006 tapes is unnecessary.  Accordingly, if plaintiffs insist that the December, 2007 tapes be searched plaintiffs and defendants should

---

[6]The Court is also mindful that cost sharing incentivizes plaintiffs to conduct discovery proportionate to its likely benefit.  To be sure, however, the Court is not ruling that this has not been done to date.

equally share the retrieval costs.  This cost is estimated to be $81,425 to $114,100 (de-duplicated). (Plaintiffs shall pay all incremental costs if they insist that the production not be de-duplicated).  The Court will not Order plaintiffs to share the cost of defendants' privilege and relevancy review of the December, 2007 tapes.  Fairness dictates that defendants pay this cost.  If plaintiffs request a review of the March, 2006 tapes they shall pay all retrieval costs, including the cost of defendants' relevancy and privilege review.  This is equitable given the redundancy of the March 2006 tapes.[7]

Conclusion

For the reasons discussed, the Court will not Order defendants to search all of their backup tapes for the requested e-mails. However, if plaintiffs insist that the search be done, the Court Orders defendants and plaintiffs to share the cost of searching the NJDOT's December 2007 backup tapes (de-duplication).  Based on defendants' estimate each side's cost of the review ranges from approximately $41,000 to $57,000.  Accordingly, for all the foregoing reasons,

---

[7]In Zubulake, 217 F.R.D. at 323-24, the court requested that a sample restoration be done before it completed its cost-shifting analysis.  The Court declines to direct that a sampling be done in this case.  The cost to search only the December 2007 tapes is not exorbitant, and it is not likely substantial costs will be saved by a sampling effort.  Further, the sampling will further delay the ultimate resolution of the case.

IT IS hereby ORDERED this 20th day of October, 2009, that defendants' Motion for a Protective Order is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that defendants' request for a protective order ruling that defendants do not have to review all of their backup tapes for the requested e-mails is GRANTED; and

IT IS FURTHER ORDERED that if plaintiffs request defendants to search the NJDOT's December, 2007 backup tapes (de-duplicated) then plaintiffs and defendants shall equally share the estimated retrieval cost of $81,425 to $114,100.  Plaintiffs shall pay the incremental costs if they request that the e-mails not be de-duplicated.  Plaintiffs do not have to share the cost of defendants' relevancy and privilege review; and

IT IS FURTHER ORDERED that if plaintiffs request defendants to search the MVC's March, 2006 backup tapes then plaintiffs shall pay all costs to retrieve and search the tapes, including defendants' cost to review their e-mails for relevancy and privilege; and

IT IS FURTHER ORDERED that plaintiffs shall advise defendants by October 27, 2009, if they request that defendants search their December 2007 and/or March 2006 backup tapes; and

15

IT IS FURTHER ORDERED that the current scheduling deadlines in the case shall remain in effect even if plaintiffs request defendants to search their backup tapes.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge