```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MAJOR TOURS, INC., et al., | HON. JEROME B. SIMANDLE |
| Plaintiffs, | Civil No. 05-3091 (JBS/JS) |
| v. | |
| MICHAEL COLOREL, et al., | **MEMORANDUM OPINION** |
| Defendants. | |

**SIMANDLE,** District Judge:

This matter is before the Court on motions for reconsideration of this Court's Opinion and Order of June 29, 2011. [Docket Items 423 & 424.] The Garage Defendants move for reconsideration of this Court's findings as to proof of racial animus and proof of damages [Docket Item 427]; the State Defendants move for reconsideration of this Court's findings as to Plaintiffs' claims involving racially discriminatory selection for inspection [Docket Item 429]; and Plaintiffs move for reconsideration of this Court's grant of partial summary judgment to the State Defendants with respect to claims of fabricated violations [Docket Item 428].

Reconsideration is warranted when a moving party demonstrates at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear

error of law or fact or to prevent manifest injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  THE COURT FINDS AS FOLLOWS:

**GARAGE DEFENDANTS' MOTION**

    1.  Although the Garage Defendants' brief makes bald claims about the fabrication of evidence, the Garage Defendants' actual contention appears to be that no reasonable jury could infer racial animus on the part of Defendant Restuccio from the circumstantial evidence adduced by Plaintiffs with respect to the § 1981 claims.  That evidence included Restuccio's unexplained and extraordinarily hostile conduct toward Major, a vague statement made by Restuccio regarding Major's previous legal actions, which involved race discrimination claims, and Restuccio's admonishments of Major not to get too "cocky" or "smart."  This issue was carefully addressed by the Court on the original motion.  Mere disagreement with the Court's determination is not a basis for reconsideration. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999). To the extent the Garage Defendants are arguing that a jury is not permitted to make inferences about intent based on discriminatory conduct and circumstantial evidence without direct evidence of that racist intent (e.g., the utterance of racial slurs or an open admission of racism), then they are simply

incorrect as a matter of law.  See, e.g., Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) (holding that there is no requirement that the defendant refer to race explicitly in order to find racial discrimination).

 2.  The Garage Defendants also argue that the Court overlooked Restuccio's deposition testimony that his hostile conduct was because "[Major] had me very upset," and so the Court should not have considered his hostile conduct to be unexplained.  But this deposition testimony did not provide an explanation for why Restuccio was so upset by Major's questions, so it fails to address the relevant question.  The Court did not overlook it, and consequently it does not warrant reconsideration.

 3.  The Garage Defendants contend that the Court did not address the motion as to the other Plaintiffs' § 1981 claims.  But as the operative complaint makes clear, the § 1981 claims are brought solely by Charles Major, Victoria Daniels, and their respective companies.  These are the only § 1981 claims asserted against the Garage Defendants.

 4.  The Garage Defendants contend that the Court overlooked evidence that Victoria Daniels waived or abandoned her damages claims against Restuccio by failing to identify damages in her deposition testimony and because her counsel made contradictory statements in hearings, including an apparent statement that Daniels had no damages claims.  The Court agrees that Plaintiffs

3

have been frustratingly unclear about which party is bringing which claims, including in the transcripts cited by the Garage Defendants.  But that is why the Court was explicit in how it was reading the pleadings, finding that only Major brought the conversion claim, Op. at 48 n.19, and the conspiracy claim related to Bus 203, Op. at 52.  A § 1981 claim requires only a racially discriminatory interference with a contract — it does not have a separate damages element.  See Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (listing elements of § 1981 claim).  Therefore, since the § 1981 claim was the only one the Court understood to be brought by Daniels, and it does not require an independent damages showing, it was unnecessary to address the question of whether the various statements adduced by the Garage Defendants were sufficiently express and clear to abandon the others.  Similarly, the Garage Defendants contend that the Court should at least have granted summary judgment with respect to Plaintiffs other than Major, Daniels, and their companies.  But the Court did not address those Plaintiffs because the claims are not brought by those Plaintiffs.

     5.  The Garage Defendants contend that the Court overlooked the part of their motion seeking summary judgment based on the lack of expert testimony regarding damages resulting from the detention of Bus 203.  But they do not present any legal argument as to why expert testimony is necessary for the claim.  While the

4

Court excluded the testimony of Plaintiffs' damages expert, the Court also noted that the evidence relied upon in the expert's report could itself be submitted to the jury to prove damages. See <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1175 (3d Cir. 1993) (finding that a business owner with sufficient knowledge of his company's operations can provide lay opinion testimony regarding damages).  Even if this lay evidence detailing significant business losses were not admissible, there can be no genuine dispute as to whether an owner of a bus experiences some degree of injury as a result of the conversion or discriminatory detention of the bus.  The extent of these damages is a matter for trial, not summary judgment.  Of course, it remains the burden of Plaintiffs Major and Daniels to prove causation and damages under § 1981 at trial.  If the Garage Defendants are asking the Court not for summary judgment on the claims, but for some kind of partial summary judgment as to the maximum quantum of Plaintiffs' damages, this was not clearly sought in the moving papers.  These Plaintiffs are limited at trial to the damages set forth in their preliminary disclosures under Rule 26(a)(1)(A)(iii) and subsequent discovery, especially where such damages are not alleged to be continuing.

    6.  As explained above, the Garage Defendants have not identified any controlling proposition of law about which there is a substantial ground for difference of opinion with this

Court's findings.  To the extent the Garage Defendants have any basis for disagreement with the Court's findings, it involves fact-bound disagreements over the scope of reasonable inferences, and not questions of law.  The Court will therefore deny the request for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**STATE'S MOTION**

    7.  The State Defendants assert that the Court failed to understand the difference between racially discriminatory purpose and racially discriminatory effects, despite the fact that the separate prongs are addressed specifically, accurately, and at some length in the Court's opinion.  <u>E.g.</u>, Op. at 23 n.7 ("Plaintiffs in this case have ample evidence to show discriminatory intent — what is potentially lacking for each claim and the main subject of dispute is whether they adduce proof that they were differently treated from similarly-situated white-owned buses.").  The only specific argument made about this putative conflation is the State Defendants' contention that once the Court found that the statistical evidence was insufficient to establish the discriminatory effect prong of an equal protection claim, that this should have ended the inquiry.  They assert that, "none of the non-statistical evidence cited by the court . . . bears any relevance to the issue of discriminatory effect."

8.  Though the Court need not belabor the point because their contention is merely reargument and therefore not a basis for reconsideration, Defendants are also incorrect.  The testimony stating that Defendants "would go out and get the buses they thought were junk because of the minorities on the bus," (Grotz Dep. 47:24-48:20), is not at all irrelevant to the discriminatory effects prong.  As the Court explained at length in the Opinion, there was evidence that Plaintiffs were subject to significantly more frequent inspections than the average tour bus company, that Defendants ignored the guidelines intended to take discretion out of the inspection process, and that Plaintiffs' buses were stopped — indeed, targeted — for reasons other than their visible defects and safety scores.  All of this is relevant to the determination of whether the inspectors' alleged racial animus found its way into their inspection decisions.  In any case, as noted above, this is just reargument; it is not a basis for reconsideration.  See Compaction Sys. Corp., 88 F. Supp. 2d at 345.  The State Defendants' motion will be denied.

**PLAINTIFFS' MOTION**

9.  Plaintiffs claim to have newly discovered evidence that warrants reconsideration of the Court's grant of partial summary judgment on the issue of fabricated violations.  Specifically,

Plaintiffs have obtained the testimony of Jeffrey Boyd, a former African-American employee of the Commercial Bus Inspection Unit. However, contrary to Plaintiffs' paraphrasing of it, Boyd's affidavit does not actually speak to the issue of fabrication of violations.  What the affidavit says is that "It was my observation that there was definitely a difference in the treatment of African-American drivers and owners.  They were written up for violations and citations for offenses that the average white company was not written up for."  Boyd Aff. ¶ 6. This is testimony about selective enforcement, not fabrication. This evidence, even if presented on summary judgment, would not have altered the Court's conclusion that there is insufficient evidence of fabricated violations to bring that issue to trial.

10.  This evidence is, however, potentially relevant to a claim of selective enforcement of the safety standards, which is distinct from claims of discriminatory stops or claims of fabricated violations.  This aspect of Plaintiffs' case, to the extent it is properly pleaded, was not the subject of the summary judgment practice, and the Court certainly made no ruling as to it.  The Court's grant of partial summary judgment was "entered in favor of the State Defendants upon Plaintiffs' claims that their violations lacked probable cause and that they were treated in a disparate manner with regard to repair at the inspection site and opportunities to tow their bus to a repair shop from the

8

inspection site." Op. at 38.  Since no party has addressed this variation of the Plaintiffs' discrimination claims and the Court has not ruled on it, the matter is not properly within the scope of this motion for reconsideration.

    11.  Finally, this Court will not consider Plaintiffs' unauthorized reply brief, and denies Plaintiffs' request for argument as to whether such a brief should be allowed.  The Local Rules permit such a reply brief upon a reconsideration motion at this Court's sole discretion, and none of Defendants' arguments warranted further briefing on a motion that is already rehashing old issues.

    12.  In sum, all three motions will be denied because they fail to present any valid basis for reconsideration.  The accompanying Order will be entered.

**October 11, 2011**                   **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                           United States District Judge